LEGA SICILIANA SOCIAL CLUB, INC. *v.* ROBERT ST. GERMAINE, SR.
(AC 25579)

Schaller, McLachlan and Berdon, Js.

Argued April 25—officially released September 13, 2005

*Eddi Z. Zyko* filed a brief for the appellant (defendant).

*Alvin Rosenbaum*, for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Robert St. Germaine, Sr., appeals from the judgment of the trial court, ren-

dered after the jury returned a verdict awarding the plaintiff nominal damages in the amount of $1. On appeal, the defendant claims that the court improperly (1) denied his motion to set aside the verdict for the plaintiff, the Lega Siciliana Social Club, Inc., and to direct a verdict for the defendant, and (2) held only a hearing in damages rather than a full trial on the issues of liability and damages. We disagree with the defendant and affirm the judgment of the trial court.

This is the second time that we have considered this case; see *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003); and our first opinion sets forth the following relevant facts. "At some point in 1994, the plaintiff purchased from the city of Waterbury a former school building, Roosevelt School, for use as a private social club, whose regular membership is restricted to native born Sicilians or natural born Americans of Sicilian ancestry. Thereafter, it sought and received a zone change from the Waterbury zoning board, despite objection from the defendant, a resident of the Norton Heights neighborhood of Waterbury, and other residents.

"Approximately five years later, in 1999, the plaintiff applied for and obtained a liquor license for the club. The defendant was unhappy that he was not provided with 'adequate notice' that the club had applied for the liquor license. In the defendant's view, the granting of a liquor license along with other operations of the club led to increased traffic and noise, which adversely affected the residents by destroying the privacy, seclusion and quiet character of their residential community.

"On or about October 24, 1999, well after the plaintiff had received approval of its liquor license, the defendant sent a letter to Nicholas Augelli, president of the board of aldermen of the city of Waterbury, in which the

[defendant] detailed his concerns regarding the club. A copy of that letter was sent to the minority leader of the board of aldermen and the zoning board. At the time the letter was sent, there were no proceedings pertaining to the club pending before either the board of aldermen or the Waterbury zoning board.

"In the letter, the defendant detailed his dissatisfaction with the increased traffic and noise that he believed stemmed from club activities and the granting of the liquor license. He also chronicled his failed attempts to persuade his elected officials to take action. In the letter, he stated: 'Now that the Liquor Permit has been granted, we are seeing even more activity at the club, with parties and gatherings. Cars are parked on both sides of the narrow road and even spilling over the adjacent streets. Our quiet neighborhood is no more!'

"On the basis of its belief that the letter contained defamatory statements, the plaintiff commenced this action. The statements in question are as follows:

" 'The rumors with the elderly go from [members of the club] having political connections in both state and local, to Mafia connections to rubber stamp whatever they want. We wish to live out our lives without fear. They as Italians do have the ethnic [muscle] to influence policy in both state and city [department] on the side of what is in their best interest for their Social Club. . . .

" 'Would Club Members allow another ethnic group to invade their [families'] quality of life as they are doing to us. . . .

" 'Due to rumors of Mafia and political connections my own wife would not sign the petitions for fear of having someone setting our house on fire. . . .'

"In response to the complaint, dated May 15, 2000, the defendant filed a motion to strike on the grounds that (1) the allegedly defamatory statements were not

made about the club, but rather its members and, therefore, the club did not have standing to sue; (2) the club failed to set forth any facts in its complaint that sufficiently allege defamation; (3) the complaint was legally insufficient and did not state a claim upon which relief can be granted because the defendant was privileged to make all statements; (4) the complaint was legally insufficient because the club did not allege that the defendant acted with malice; (5) the complaint was legally insufficient because the club did not plead any cognizable damage or harm because a corporation does not have a reputation that can be injured by the alleged acts; and (6) the club's prayer for relief was insufficient because it did not correspond to or was not supported by the allegations. The court denied the motion to strike on the grounds that the club's allegations sufficiently set forth a cause of action for defamation and libel per se, and that the club was not required, as a matter of law, to plead actual or special damages.

"Subsequently, the defendant filed a motion for summary judgment in which he denied making the statements, claimed that the statements were not libelous per se and that the plaintiff had not shown any 'cognizable damage or harm' to its reputation. . . .

"The court granted the defendant's motion for summary judgment on the ground that the allegedly defamatory statements did not constitute libel per se. The court further concluded that because the statements were not libelous per se, to prevail, the plaintiff had to show 'cognizable damage or harm' to its reputation to survive a motion for summary judgment. On the basis of the documents filed in conjunction with the motion for summary judgment, the court concluded that the plaintiff had shown no 'cognizable damage or harm' as a consequence of the defendant's allegedly libelous statements." Id., 849–51.

Concluding that the statements made by the defendant were libelous per se, we reversed the judgment of the trial court and remanded the case for further proceedings in accordance with law. Id., 857. On remand, the court presided over a hearing in damages, after which the jury returned a verdict in favor of the plaintiff, awarding nominal damages in the amount of $1. After the judgment, the defendant filed a motion to set aside the verdict and to direct a defendant's verdict, which the court denied. The defendant then filed this appeal.

As a preliminary matter, we set forth the standard by which we review the defendant's claim that the court failed to follow the instruction of our first opinion. "Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion.* . . . This is the guiding principle that the trial court must observe. . . . Compliance means that the direction is not deviated from. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered, even though it may be one that the appellate court might have directed. The trial court should examine the mandate and *the opinion of the reviewing court and proceed in conformity with the views expressed therein.*" (Emphasis in original; internal quotation marks omitted.) *Halpern* v. *Board of Education,* 231 Conn. 308, 311, 649 A.2d 534 (1994).

We concluded that the defendant's statements were libelous per se, and, as such, the defendant was not required to plead or prove actual damages. *Lega Siciliana Social Club, Inc.* v. *St. Germaine,* supra, 77 Conn. App. 853–55. The only question left for the court to

answer after we remanded the case was the extent of the injury to the plaintiff's reputation, which the court accomplished by conducting a hearing in damages. The defendant cannot claim, as he does, that the court misinterpreted the mandate of our first opinion by failing to preside over a trial on both liability and damages because our determination that the defendant's statements were libelous per se established the defendant's liability, making a trial on liability unnecessary.

The defendant also claims that the court improperly denied his motion to set aside the verdict and to direct a verdict in his favor. In light of our previous opinion, the court could not grant the defendant's motion. "No judgment other than that directed or permitted by the reviewing court may be rendered . . . ." (Internal quotation marks omitted.) *Halpern* v. *Board of Education,* supra, 231 Conn. 311. We determined that the defendant was liable for his statements as a matter of law, requiring a verdict in favor of the plaintiff.

The judgment is affirmed.